

**SO ORDERED,**

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| In re: | ) | | |
|---|---|---|---|
| | ) | | |
| RAPHAEL YATES SMITH, | ) | Case No.: | 15-10138-JDW |
| | ) | | |
| Debtor. | ) | Chapter: | 7 |
| | ) | | |

## ORDER

This case came before the Court for a telephonic status hearing on March 8, 2017, on the Application to Compromise Controversy and Settle Insurance Claim (the "Application")(Dkt. # 34) filed on behalf of Raphael Yates Smith (the "Debtor"). Robert Gambrell appeared at the hearing on behalf of the Debtor, and the chapter 7 trustee, Selene Maddox (the "Trustee"), appeared on her own behalf. In the Application, the Debtor seeks Court approval of the settlement of her insurance claim for fire damage to her real and personal property and distribution of the proceeds. Based on the

1

parties' agreement, the Court approved both the total amount of the settlement and the distribution of the proceeds attributable to the real property damage. The Court approved the distribution of a portion of the proceeds attributable to the personal property loss (*See* Agreed Order, Dkt. # 41). The Court reserved ruling on the distribution of the remainder of the proceeds attributable to personal property loss, and the parties submitted simultaneous briefs on that issue on May 26, 2017 (Dkt. # 47, 48).

The only issue before the Court is whether the nonexempt proceeds attributable to personal property loss are property of the Debtor's converted chapter 7 bankruptcy estate. If so, those proceeds are due to be distributed to creditors. If not, the proceeds belong to the Debtor. The Court finds and concludes that the proceeds are property of the estate and are due to be distributed by the Trustee in accordance with the Bankruptcy Code.[1]

## I.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984. This is a core proceeding arising under Title

---

[1] All statutory references are to Title 11, United States Code (the "Bankruptcy Code") unless otherwise noted.

2

11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O).

## II.  FACTS

The Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on January 15, 2015 (the "Petition Date")(Dkt. # 1). She lost her job during the summer of 2016 as a result of a medical impairment and has been unemployed since that time. The Debtor converted her case to a chapter 7 case on January 3, 2017 (Dkt. # 28). The Trustee agrees that the Debtor's conversion from chapter 13 to chapter 7 was in good faith.

The Debtor's husband, Darryl T. Smith, filed a separate petition for relief under Chapter 13 of the Bankruptcy Code on July 16, 2015. Mr. Smith's case remains an active chapter 13 case pending before this Court (Case No. 15-12507-JDW).

The Debtor and her husband each own a 50% interest in their homestead, which is located in Southaven, Mississippi (the "Homestead"). On October 20, 2016, a fire severely damaged the Homestead and destroyed its contents. The Homestead and its contents were insured by GuideOne Mutual Insurance Company ("GuideOne"). GuideOne had issued Homeowners' Policy Number 060541405 (the "Policy") to the Debtor and her

husband at least as early as December 5, 2014.[2] The Policy was renewed on its anniversary date of December 5, 2015, and was in effect at the time of the fire.

GuideOne offered a settlement in the amount of $63,906.24 for the damage to the Homestead. The Trustee and the Debtor agreed that the proceeds of the insurance claim for damages to the Homestead were exempt, and the Court entered an Order (Dkt. #41) authorizing the settlement of that portion of the claim and authorizing those proceeds to be used to repair the Homestead. There is no dispute as to the insurance proceeds related to the damage to the Homestead.

GuideOne also offered the Debtor and her husband the total sum of $57,209.54 for the loss of the personal property located in the Homestead. This settlement amount was also approved by the Court (Dkt. # 41). The Debtor's 50% interest in the proceeds is $28,604.77.[3] The Court previously authorized the Debtor to retain up to the sum of $10,125.00 of the proceeds as an exempt asset, but reserved ruling on the distribution of the remaining, nonexempt $18,479.77 from the Debtor's portion of the personal property

---

[2] The Policy may have been issued earlier, and the December 5, 2014 date may have been a renewal as well. In any event, the Policy in effect as of the Petition Date was the same Policy in effect at the time of the loss and the same policy under which the funds at issue were paid.

[3] The Debtor's husband's 50% share of the personal property settlement, less his exempt portion, is being administered by the trustee in his separate chapter 13 bankruptcy case.

insurance claim (the "Funds")(Dkt. # 41). A timeline of relevant events is below:

| Date | Event |
|---|---|
| December 5, 2014 | First known effective date of Policy |
| January 15, 2015 | Debtor's Petition Date |
| December 5, 2015 | Policy Renewed |
| October 20, 2016 | Fire Loss |
| January 3, 2017 | Debtor's Case Converted |

## III. ANALYSIS

### A. Property of the Estate

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Whether a debtor has a legal or equitable interest in property of the kind sufficient to bring property into the bankruptcy estate is a matter determined by state law. *Mitchell v. BankIllinois*, 316 B.R. 891 (Bankr. S.D. Tex. 2004). Once the debtor's state law property interests are determined, federal bankruptcy law is applied to establish the extent to which those interests are property of the estate. *Butner v. United States*, 440 U.S. 48, 55 (1979).

All personal and real property owned by a debtor as of the commencement of the case is property of the estate. 11 U.S.C. § 541(a).

"[Property of the estate] is intended to be broadly construed, and courts are generally in agreement that an insurance policy will be considered property of the estate." *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993). In addition, the bankruptcy estate includes "proceeds, product, offspring, rents or profits of or from property of the estate." 11 U.S.C. § 541(a)(6).

The conversion of a case from chapter 13 to chapter 7 does not commence a new bankruptcy case. 11 U.S.C. § 348. Absent a bad faith conversion, § 348(f) limits a converted chapter 7 bankruptcy estate to property belonging to the debtor as of the date the original chapter 13 petition was filed. Accordingly, in a chapter 7 case converted from chapter 13, "a debtor's postpetition earnings and acquisitions do not become part of the new chapter 7 estate." *Harris v. Viegelahn*, --- U.S. ---, 135 S.Ct. 1829, 1837 (2015). The Trustee and the Debtor agree that the conversion of the Debtor's case was not in bad faith, and that therefore, property acquired or wages earned by the Debtor after the Petition Date are not property of bankruptcy estate. The parties' disagreement centers on the application of § 541(a)(6), which provides that "proceeds . . . of or from property of the estate" is also property of the estate. 11 U.S.C. § 541(a)(6).

The Trustee argues that the Funds are proceeds of the Policy, and that the Policy is itself a prepetition asset. The Debtor argues that the Policy is a

6

postpetition asset, issued after the Petition Date and funded with postpetition wages. The Debtor acknowledges that if the Policy is a prepetition asset, the inquiry would end there, and the Funds are property of the Debtor's estate. *See Edgeworth*, 993 F.2d at 55.

### B. Insurance Policy as Property of the Estate

Prepetition insurance policies are property of chapter 7 debtor's estate, because, "regardless of who the insured is, the debtor retains certain contract rights under the policy itself." *Edgeworth*, 993 F.2d at 55. "Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate." Thus, a debtor's right to receive the proceeds of a prepetition insurance policy is property of that debtor's chapter 7 bankruptcy estate, independent of whether the insured property is property of the estate.

On the Petition Date, the personal property was insured by the Policy with GuideOne, the same insurance company that paid the claim that resulted in the Funds being held in escrow. The basis of the Debtor's argument that the Policy is a postpetition asset is her contention that each yearly renewal of the Policy was a new contract. She alleges that the renewal of the Policy that was effective December 5, 2015 through December 5, 2016, was a new insurance contract with GuideOne, and not a continuation of the prepetition policy.

7

In support of this argument, the Debtor cites the Fifth Circuit case of *In re McLain*, 516 F.3d 301 (5th Cir. 2008). In *McLain,* the Fifth Circuit reversed the lower courts, which had held that proceeds of a life insurance policy purchased postpetition were not property of the estate, despite the fact that the debtor may have used concealed prepetition funds to purchase the policy postpetition. *Id.* The Debtor argues that since there is no contention that the Debtor used prepetition funds to purchase the Policy, either concealed or otherwise, that the Policy is necessarily a postpetition asset. This argument ignores the obvious difference between the policy purchased for the first time postpetition in *McClain* and the Policy here, in place prepetition and simply renewed postpetition.

"The majority of published caselaw" holds that renewals of insurance contracts are generally viewed as extensions of the original policies, not new contracts. *In re Country Club Estates at Aventura Maintenance Ass'n, Inc.*, 227 B.R. 565, 567 (Bankr. S.D.Fla. 1998)(citations omitted). In *Gurley v. Carpenter*, 855 F.2d 194, 195 (5th Cir. 1988), the Fifth Circuit examined a Mississippi insurance policy, and held that the "policy with its renewal provision is a continuous policy rather than a sequence of independent policies." The result may be different if a contract is renewed with new or modified terms, *Country Club Estates*, 227 B.R. at 568, but there is no evidence that any terms of this Policy changed with the renewal. It is clear

8

that the prepetition policy was not canceled, nor was a new policy number issued with each renewal. Accordingly, the Court finds and concludes that the Policy is a prepetition policy. In her brief, the Debtor concedes that if the Policy is a prepetition asset, both the Policy and its proceeds are property of the estate (Dkt. # 48 ¶ 9). The Funds are proceeds of the prepetition Policy, and thus the Funds are property of the estate under § 541(a)(6).

Furthermore, the definition of "property of the estate" must be "broadly construed." *Edgeworth*, 993 F.2d at 55. The Policy in effect at the time of the fire loss, effective December 5, 2015 through December 5, 2016, was simply a continuation of the previous policy. It was between the same parties, bore the same policy number, and there is no evidence that the terms had changed. There was no gap in coverage. There was a seamless transition between the renewal terms, and it does not appear that any new negotiations were undertaken – the Policy was simply renewed on an annual basis, as most insurance policies are.

Finally, the fact that the Debtor may have used non-estate, postpetition funds to pay the postpetition premiums on the prepetition Policy does not transform the Policy to a postpetition or non-estate asset. While it is true that under *Harris,* absent bad faith, a debtor's postpetition, preconversion earnings are not property of a converted chapter 7 bankruptcy case, it does not follow that using postpetition earnings to make payments on a

9

prepetition asset somehow changes the character of the asset or removes it from property of the estate. *Harris,* 135 S.Ct. at 1837. Otherwise, every debtor who makes a single payment on her home or car with postpetition wages would be able to immediately remove those assets from the estate. This is an absurd result with no legal basis.

### C. Public Policy

The Court's conclusion today also furthers public policy. It is now clear that the Debtor either failed to disclose or greatly undervalued the personal property in her schedules. Her bankruptcy schedules, signed under oath, valued her 50% interest in all of the personal property covered by the Policy at $2,925 and claimed it as entirely exempt (Dkt. # 1). Less than two years later, the total insurance proceeds paid for her 50% interest in this same property was $28,604.77—nearly 10 times the scheduled value. Even after deducting the full amount to which the Debtor is entitled for personal property exemptions, the balance is $18,479.77. While the insurance company's replacement valuation of that property may indeed be greater than the appropriate scheduled value, such a large discrepancy suggests significant undervaluation by the Debtor in her sworn schedules. It would be unfair to the unsecured creditors to reward the Debtor for her undervaluation of her assets and serendipitous fire loss with the Funds, which rightfully should be distributed to the unsecured creditors.

## IV. <u>CONCLUSION</u>

The Policy was in effect on the Petition Date. The assets insured by the Policy were also owned by the Debtor on the Petition Date. Under any analysis, the Policy was an asset of the bankruptcy estate on the Petition Date. As such, any nonexempt proceeds of the Policy are also property of the bankruptcy estate pursuant to § 541(a)(6) and must be distributed to creditors. The Trustee is entitled to the Funds and may distribute them in accordance with the provisions of the Bankruptcy Code. Accordingly, is hereby

**ORDERED, ADJUDGED, and DECREED** that

1. the insurance proceeds being held in escrow in the amount of $18,479.77 are property of the Debtor's bankruptcy estate; and

2. the Trustee is authorized to distribute the funds in accordance with the requirements of the Bankruptcy Code.

##END OF ORDER##